IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOSEPH POWELL III, on his own behalf and on behalf of his minor offspring, J.D.,<br><br>              Plaintiff,<br><br>    vs.<br><br>STATE OF HAWAII; COUNTY OF MAUI; DEPARTMENT OF PUBLIC SAFETY; DEPARTMENT OF HUMAN SERVICES; MAUI POLICE DEPARTMENT; AND DOES 1-100,<br><br>              Defendants. | CIV. NO. 23-00005 JAO-RT<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 12 AND 13, WITH LEAVE TO AMEND |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 12 AND 13, WITH LEAVE TO AMEND**

Before the Court are two motions to dismiss Plaintiff Joseph Powell III's pro se Complaint:  a Motion to Dismiss, ECF No. 12, filed by Defendants State of Hawaiʻi, Department of Public Safety, and Department of Human Services (collectively, the "State Defendants"); and a Motion to Dismiss, ECF No. 13, filed by Defendants County of Maui and Maui Police Department (collectively, the "County Defendants").  For the reasons explained below, the Court GRANTS both Motions but does so with leave to amend portions of the Complaint.

## I.     BACKGROUND

For relevant background, the Court provides a brief summary of Plaintiff's Complaint.  The Court's summary is not intended to cover every facet of the factual allegations and legal theories asserted by Plaintiff.

### A.     Factual Allegations

The Complaint is a federal question complaint asserting federal civil rights claims and pendant state law tort claims against the State Defendants, the County Defendants, and Doe Defendants.  ECF No. 1 at 1–2.  The claims arise from Plaintiff's April 2019 to January 2020 incarceration at the Maui Community Correctional Center ("MCCC") and from the foster care placement of Plaintiff's minor child, J.D., in April 2019 and January 2021 by the Department of Human Services ("DHS").  *See id.* at 5–13.  The Department of Public Safety ("DPS") is implicated because it oversees MCCC.  *See id.* at 5.  The Maui Police Department ("MPD") is implicated because it effected Plaintiff's April 2019 arrest and because it extracted J.D. from Plaintiff's custody in January 2021 in order to transfer J.D. to foster care.  *See id.*  The Complaint alleges that the Defendants acted "under the color of law," *id.* at 3, and that Defendants "conspired together" to commit the alleged wrongs, *id.* at 5.  *See also id.* at 3–4 (alleging that "DOES 1–100" may be "co-conspirators" of the named Defendants).

The genesis of Plaintiff's claims is his 2018 "whistleblowing" activity, in which he "began advocating and spreading awareness . . . about trafficking and corruption within the [Hawaiʻi] Family Court System and other State/County agencies." *Id.* at 5. That whistleblowing activity caused Plaintiff to be "targeted in retaliation by the very agencies, departments and people that he was whistleblowing on." *Id.* The retaliation began on April 12, 2019, when DHS employees removed J.D. from Plaintiff's custody. *Id.* The next day, MPD officers falsely arrested Plaintiff for fabricated charges and falsified evidence in an attempt to make the charges stick. *Id.* Although the attempt ultimately failed because the charges were dropped, Plaintiff was falsely imprisoned for ten months at MCCC and consequently deprived of his due process. *See id* at 5–6.

During the MCCC incarceration, DPS employees disparately treated and discriminated against Plaintiff based on his race, including by holding him in solitary confinement without adequate cause and subjecting him to shouts of "white power." *Id.*

The retaliatory treatment continued after Plaintiff's release in January 2020. *See id.* at 6. Despite Plaintiff providing adequate care and safety for J.D., DHS employees committed perjury and fraud on the family court by falsely declaring that Plaintiff was homeless, with knowledge to the contrary. *Id.* at 6–7. Those intentionally false statements were made for the purposes of silencing Plaintiff's

3

whistleblowing and aiding in the kidnapping of J.D.  *Id.* at 7.  The kidnapping

occurred on January 5, 2021, when Plaintiff was ambushed by plain-clothed MPD

officers who "forcefully ripped [J.D.'s] stroller away from [Plaintiff] and

handcuffed [Plaintiff], while forcing JD into a car to be placed immediately into

foster care."  *Id.*  The basis for the officers' actions was an "unpaid minor traffic

offense," an offense for which Plaintiff was immediately released upon paying the

necessary fine.  *Id.*

        J.D. was not, however, immediately released by DHS.  *Id.*  She remained in

foster care due to DHS employees' "unlawful tactics," including subjecting

Plaintiff to "invasive evaluations that violate [his] individual rights to privacy

under the 4th amendment" and depriving Plaintiff of his "5th amendment criminal

protections [by] forcing [him] to testify and complete these evaluations."  *Id.* at 7–

8; *see also id.* at 9–10 (accusing DHS employees of switching the requirements on

Plaintiff "to continue to abuse this power to keep JD in foster care" and alleging

that "Defendants retained specific providers that are sub-contracted with DHS in

order to have easy access and manipulation over the reports and evaluations").

DHS employees wrongfully committed those acts as retaliation and also as

discrimination based on Plaintiff's race, culture, and religion.  *See id.* at 10.

        Moreover, Plaintiff says, the State of Hawaiʻi never provided a reason or

cause for J.D. to be held in foster care.  *Id.* at 8.  And the State-appointed guardian

ad litem conspired with DHS agents to wrongfully defame Plaintiff's character. *See id.* at 10. Those actions "directly deprived [Plaintiff and J.D.] of fundamental [family] rights without the [family court] having provided any of the constitutional guarantees necessary under the First Amendment to protect the rights of the minor in question." *Id.* at 8.

Plaintiff eventually regained custody of J.D. after 500 days of foster care and after filing a civil complaint in a Hawaiʻi state court concerning the events outlined above. *See id.* at 12. Yet, even while in foster care, J.D. was subjected to sexual, physical, and mental abuse, including J.D. receiving a "large hematoma and gash on her forehead" and J.D. "disclos[ing] sexual abuse in front of a DHS employee at a supervised visit, leading to a formal police report being filed with MPD." *Id.* at 11. DHS and MPD failed to take proper actions to investigate the allegations of abuse against J.D., exposing her to additional pain and suffering. *See id.* at 11–12.

**B.    Legal Theories**

Plaintiff asserts legal claims on behalf of himself and J.D. in seven numbered counts. *See id.* at 13–28. Count I appears to assert claims for deprivation of procedural and substantive due process directly under the Fourteenth Amendment and against all Defendants. *See id.* at 13–17. In support of those claims, Plaintiff lists fifteen ways in which Defendants violated his and/or J.D.'s due process rights. *Id.* at 13–15. Most of the allegations in that list are

presented in the "Facts" section of Plaintiff's Complaint, summarized above, while a few are not, e.g., that Defendants "impermissibly applied a rational basis procedural standard when directly regulating core fundamental rights," *id.* at 14.

Count II appears to assert a claim against all Defendants except DPS for kidnapping J.D. under the federal criminal statute 18 U.S.C. § 1201. *See* ECF No. 1 at 17–19.

Count III appears to assert a claim for negligent training and supervision under Hawaiʻi law and against all Defendants. *See id.* 19–22. The Court also liberally construes Count III as asserting a liability theory of inadequate training under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), in relation to Count IV's claims under 42 U.S.C. § 1983. *See* ECF No. 1 at 19–24. As for inadequate training liability, the Court interprets Count III as alleging four categories of unconstitutional actions committed by Defendants' employees: DHS and MPD employees' kidnapping J.D.; DHS and MPD employees' corrupt behavior in J.D.'s custody proceedings; DHS and MPD employees' negligently failing to prevent abuse of J.D.; and DPS employees' permitting discriminatory behavior against Plaintiff at MCCC. *See id.* at 19–22.

Skipping to Count V, that count appears to assert a claim for violation of equal protection (discrimination) directly under the Fourteenth Amendment and against all Defendants. *See id.* at 24–25.

Count VI appears to assert a claim for false imprisonment directly under the Fourteenth Amendment and against all Defendants except DHS. *See id.* at 25–27. Count VI also appears to assert a claim for false arrest directly under the Fourth Amendment and against all Defendants except DHS. *See id.* The Court also liberally construes Count VI as asserting a claim for false imprisonment under Hawaiʻi law. *See id.* As far as the Court can tell, Count VI relates to Plaintiff's ten-month incarceration at MCCC. *See id.*

Count VII appears to assert a claim for intentional infliction of emotional distress under Hawaiʻi law and against all Defendants except DPS. *See id.* at 27–28.

Returning back to Count IV, and applying the most liberal construction in favor of pro se Plaintiff, Count IV appears to assert claims under 42 U.S.C. § 1983 against all Defendants for the constitutional violations asserted in the other counts. *See* ECF No. 1 at 23–24. So, liberally construed, Count IV asserts § 1983 claims for depriving Plaintiff and/or J.D. of their rights to not be falsely arrested in violation of the Fourth Amendment, to not be falsely imprisoned in violation of the Fourteenth Amendment, to equal protection under the Fourteenth Amendment, to procedural due process under the Fourteenth Amendment, and to substantive due process under the Fourteenth Amendment. Count IV specifically alleges that "[a]t

all times relevant hereto, Defendants acted pursuant to a policy or custom of depriving [Plaintiff and J.D.] of their civil rights. *Id.* at 23.

As for remedies, the Complaint requests "compensation for all past and future damages," including in the forms of "special, general, and punitive damages," "in an amount that the court deems proper and fit, with a minimum sum of $5,000,000." *Id.* at 28, 29. The Complaint also requests "[p]rejudgment interest" and "declaratory judgement that the practices asserted in this Complaint are unlawful and violate 42 U.S.C. [§] 1983." *Id.*

## C.   Filings and Procedure

Plaintiff filed his pro se Complaint on January 5, 2023. ECF No. 1. The State Defendants and the County Defendants both filed their Motions to Dismiss on April 14, 2023. ECF Nos. 12, 13. The County Defendants later filed a Joinder to the State Defendants' Motion in which the County Defendants seek to specifically join in the State Defendants' arguments concerning the federal kidnapping claim. ECF No. 21. Plaintiff filed Oppositions to the Motions to Dismiss on May 25, 2023. ECF Nos. 28, 29. Plaintiff does not oppose the Joinder motion.

Defendants' Motions were held in abeyance for a period of roughly one month while the parties litigated whether Plaintiff would be permitted to amend his Complaint via motion. *See* ECF Nos. 18, 25, 27, 30, 36, 38. Magistrate Judge

Rom Trader denied what was effectively a second Motion to Amend, ECF No. 30, in an Entering Order dated June 13, 2023, ECF No. 36, ending the amendment litigation.

The Court pivoted back to the pending Motions to Dismiss by extending the deadlines for Defendants to file optional replies to Plaintiff's Oppositions.  ECF No. 39.  The County Defendants filed a Reply on June 27, 2023, ECF No. 40, and the State Defendants filed a Reply on June 28, 2023, ECF No. 41.  The Court elected to decide the Motions to Dismiss without a hearing.  ECF No. 42.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  Under Rule 12(b)(6), the court accepts as true the material facts alleged in the complaint and construes them in the light most favorable to the nonmovant.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation"; "[a] pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting and altering *Twombly*, 550 U.S. at 557).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" whereby the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570, in relation to the "short and plain" fact-pleading standard required by Federal Rule of Civil Procedure 8(a)(2)).

Plaintiff is proceeding pro se, and so the court liberally construes his Complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).  The Court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . , a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).  Put differently, the Court can deny leave to amend if amending would be "futile." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004).

## III.   DISCUSSION

As a preliminary matter, the Court grants the County Defendants' Joinder to the State Defendants' Motion, ECF No. 21.  The Court first analyzes the State Defendants' Motion, ultimately granting that Motion and dismissing all claims against the State Defendants without leave to amend.  The Court then analyzes the County Defendants' Motion, likewise granting that Motion and dismissing all claims against the County Defendants but with leave to amend certain claims. Finally, the Court addresses the "DOES 1–100" mentioned in Plaintiff's Complaint.

### A.   Claims Against the State Defendants

The Court finds multiple defects in Plaintiff's claims against the State Defendants.  Those defects are fatal to the Rule 12(b)(6) analysis and cannot be cured by amendment.  The Court addresses the claims in what it considers a logical, but not numerical, order.

The constitutional claims in Counts I, V, and VI lack cognizable legal theories because the law bars constitutional claims against a state or its agencies for retrospective relief.  The law does recognize constitutional claims against a state (more accurately, against a state official acting in his or her official capacity) for prospective injunctive relief.  *See Cardenas v. Anzai*, 311 F.3d 929, 934–35 (9th Cir. 2002) (citing and explaining *Ex parte Young*, 209 U.S. 123, 159–60

(1908)).  But as the State Defendants correctly point out, *see* ECF No. 12-1 at 9–10, the constitutional claims in Counts I, V, and VI concern only prior actions—not ongoing conduct—and thus seek only retrospective relief in the form of money damages and ex post declaratory judgments.  *See* ECF No. 1 at 17, 25, 27, 28–29.  The Eleventh Amendment bars such claims against the State of Hawai‘i and its agencies, DHS and DPS.  *See Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw., Inc.*, 810 F.2d 869, 874 (9th Cir. 1987); *see also Green v. Mansour*, 474 U.S. 64, 73 (1985) (holding that the Eleventh Amendment bars declaratory judgments by federal courts against state officials when no continuing threat of harm or unlawfulness exits).  So, again, the constitutional claims in Counts I, V, and VI lack cognizable legal theories and are dismissed with respect to the State Defendants.

The kidnapping claim in Count II fails, too, because it is pled under a federal criminal statute, 18 U.S.C. § 1201, and because federal criminal statutes rarely, if ever, provide private causes of action.  *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (reiterating that a private right of action under a criminal statute is rarely implied).  There is certainly no implied cause of action under the kidnapping statute.  *See Tillman v. L.A. Cnty. Dist. Attorney's Off.*, 2022 WL 19829379, at *2 (C.D. Cal. Sept. 21, 2022) (holding that the federal kidnapping statute, 18 U.S.C. §§ 1201–02, is a criminal statute that does not give rise to a private cause of

action).  The kidnapping claim in Count II thus lacks a cognizable legal theory and is dismissed with respect to the State Defendants.

Next are the § 1983 claims in Count IV.  "Section 1983 is a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials."  *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (citation and quotation marks omitted).  "To state a claim under § 1983, a plaintiff . . . must show that the alleged deprivation was committed by a *person* acting under color of state law."  *Id.* at 1035–36 (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) (emphasis added) (omitting first element).  The problem with Plaintiff's § 1983 claims is that the State of Hawaiʻi and its agencies are not "persons," as explained in § 1983 case law.  *See Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 62–64 (1989)).  So the § 1983 claims in Count IV also lack cognizable legal theories and are dismissed with respect to the State Defendants.

The only claims left against the State Defendants are the Hawaiʻi law claims in Counts III, VI, and VII.  Those claims also fail—the Eleventh Amendment bars state law claims for damages and retrospective declaratory relief against the State of Hawaiʻi and its agencies.  *See Campbell v. Dep't of Hum. Servs.*, 349 F. Supp. 3d 1019, 1024 (D. Haw. 2018); *see also Cent. Rsrv. Life of N. Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1161 (9th Cir. 1988) ("The [Eleventh Amendment] does,

13

however, bar claims in federal court asserted against state officers based on alleged violations of *state* law."). Plaintiff does not plead an ongoing violation of state law or request prospective injunctive relief, *see* ECF No. 1 at 22, 27, 76, 28–29, so the state law claims in Counts III, VI, and VII also lack cognizable legal theories and are dismissed with respect to the State Defendants.

In sum, the Court dismisses all claims against the State Defendants pursuant to Rule 12(b)(6). The Court does so without leave to amend because any amendment of those claims would be futile given that the State has Eleventh Amendment immunity and that the Complaint does not embrace the possibility of a continuing violation of law. *See Pauline v. State of Haw. Dep't of Pub. Safety*, 773 F. Supp. 2d 914, 922 (D. Haw. 2011) ("Courts in this district have ruled that DPS is not a 'person' under § 1983 and that a § 1983 claim against DPS fails as a matter of law.") (denying motion for leave to amend a § 1983 claim asserted against DPS because the plaintiff could not possibly correct the defect, i.e., any amendment was "futile"). Although Plaintiff makes no individual claims against the State Defendants' employees, he should be aware when potentially amending his Doe defendant claims, *see infra* Part III.C., that the Eleventh Amendment bars claims against the State Defendants' employees for actions taken in their official capacities (except when seeking prospective injunctive relief against such actions), *see Cardenas*, 311 F.3d at 934; the Eleventh Amendment does not, however, bar

claims against state officials for actions taken in their individual capacities, *see Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992).  Because there are no claims remaining against the State Defendants, they are dismissed from this case.

## B.    Claims Against the County Defendants

Plaintiff's claims against the County Defendants are defective for similar reasons as his claims against the State Defendants.  Indeed, the kidnapping claim in Count II fails for exactly the same reason:  the federal kidnapping statute, 18 U.S.C. § 1201, does not create a private cause of action, leaving Count II without a cognizable legal theory.  *See Tillman*, 2022 WL 19829379, at *2; *see also Chrysler Corp.*, 441 U.S. at 316.  That claim, therefore, is dismissed with respect to the County Defendants and without leave to amend.

The constitutional claims in Counts I, V, and VI lack cognizable legal theories because they amount to direct constitutional claims and because direct constitutional claims are prohibited when the § 1983 vehicle is available to Plaintiff.  *See Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution.  We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.").  Although Plaintiff's § 1983 claims are also dismissed below, the § 1983 vehicle is still available for Plaintiff to use against the County Defendants, should he fix the pleading deficiencies

15

identified below.  The constitutional claims in Counts I, V, and VI are therefore dismissed without leave to amend.

Count IV contains the various § 1983 claims.  The County Defendants are potentially proper targets of those claims.  *See Nakagawa v. County of Maui*, 2014 WL 1213558, at *10 (D. Haw. Mar. 21, 2014), *aff'd*, 686 F. App'x 388 (9th Cir. 2017).  As municipal entities, they can bear § 1983 liability in relation to their employees' unlawful actions under the circumstances laid out in *Monell*:  "[t]he Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom."  *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell*, 436 U.S. at 649).  "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'"  *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016)) (alteration in original).  "[P]olicies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, . . . and, in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality."  *Id.* (citation omitted).  Another possible circumstance for

*Monell* liability is when "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

In support of his § 1983 claims against the County Defendants, Plaintiff alleges that "Defendants acted pursuant to a policy or custom of depriving [Plaintiff and J.D.] of their civil rights." ECF No. 1 at 23. But that allegation is too conclusory to sustain *Monell* liability at the motion to dismiss stage. It amounts to nothing more than a legal conclusion couched as a factual allegation, which is insufficient under the federal civil pleading standards of Rule 8. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *Sanghvi v. County of San Bernardino*, 2022 WL 486634, at *2 (9th Cir. Feb. 17, 2022) (mem.) ("Appellants' complaint fails to point to any specific 'policy or custom' that resulted in a constitutional deprivation. *Monell*, 436 U.S. at 694. Appellants' conclusory allegation that Appellees 'acted under color of statutes, regulations, customs, and usages of the County of Los Angeles, County of San Bernardino . . . for purposes of . . . 42 U.S.C. § 1983' is insufficient to state a claim under *Monell*.").

The Court recognizes that Plaintiff is proceeding pro se and that it may seem difficult to describe policies or customs of municipal entities into which Plaintiff has not conducted formal discovery. As guidance, the Court directs Plaintiff to the

17

Ninth Circuit's various holdings concerning "policy or custom" pleading:  To establish *Monell* liability through a "policy," Plaintiff would ultimately need to prove—and thus support with sufficient allegations at the motion to dismiss stage—that "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).  "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury" and "the [ultimate] injury would have been avoided had proper policies been implemented."  *Long v. County of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006) (citations and quotation marks omitted).  As for *Monell* "custom" liability, Plaintiff must sufficiently allege and ultimately prove "the existence of a longstanding practice or custom" that is "so widespread as to have the force of law."  *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 884 (9th Cir. 2022) (quoting *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).  "[A]n entity may be held liable under this [custom] theory, for example, where it 'fails to implement procedural safeguards to prevent constitutional violations' or 'fails to train its employees adequately.'"  *Id.* (quoting *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021)).  "Plaintiff[] cannot allege a widespread practice or custom

18

based on 'isolated or sporadic incidents; [liability] must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.'" *Id.* (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)) (second alteration in original).  Only in "rare instances" may a "single instance" of a constitutional violation establish a custom under *Monell*.  *Benavidez*, 993 F.3d at 1153.

Plaintiff need not "exhaustively detail the County's alleged policies at the pleadings, but he must plausibly illustrate that policies or customs of some sort exist." *Jones v. Cnty. of San Mateo*, 2021 WL 6049913, at *4 (N.D. Cal. Dec. 21, 2021).  "[P]laintiff must plead what [he] knows—whether it is a number of incidents or some other evidence—that renders plausible [his] conclusion that there is a policy, custom, or practice in place." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1216 (D.N.M. 2015).  "The expectation is that [Plaintiff] must tell the Court at the outset, in the complaint, (i) why [he] thinks a policy exists— alleging specific facts; and (ii) what [he] thinks the policy is.  The Court will then decide whether (i) plausibly suggests (ii)." *Id.*  Plaintiff's current allegations of a "policy or custom" are too conclusory to satisfy either step.

Plaintiff's allegations fare no better with respect to another potential circumstance for *Monell* liability, "policy-making authority ratifi[cation]," *Gillette*, 979 F.2d at 1346–47.  That is because Plaintiff's allegations do not even address

19

that liability circumstance.  Plaintiff admits as much by arguing in his Opposition that "simply because this [circumstance] was not alleged in the pleading is not grounds for this Complaint to be dismissed."  ECF No. 29 at 5.  Contrary to Plaintiff's argument, the failure to plead sufficient allegations supporting *Monell* liability against a municipality is a proper ground to dismiss a § 1983 claim against that municipality.  *See Hernandez*, 666 F.3d at 637.

The last possible circumstance of *Monell* liability is a particular type of "custom or practice":  the "failure to train municipal employees on avoiding certain obvious constitutional violations."  *Benavidez*, 993 F.3d at 1153.  Plaintiff's allegations concerning that circumstance are, however, insufficient to keep his § 1983 claims afloat.  Above, the Court summarized the failure to train allegations in Count III into four categories of allegedly unconstitutional employee actions, *see supra* Part I.B., each of which Plaintiff uses to inferentially allege that Defendants failed to adequately train their employees.  *See, e.g.*, ECF No. 1 at 20 ("If [Defendants] had implemented proper selection, training and/or supervision of it's employees, [Defendants] would have promptly reversed and rectified the wrongful and unlawful kidnapping of JD[.]").  In other words, Plaintiff alleges that because various wrongful actions occurred, there must have been a failure to adequately train.  Somewhat alternatively, Plaintiff alleges that Defendants "knew or should have known" of the wrongful actions.  *See, e.g.*, *id.* at 21.

Those allegations fail Rule 12(b)(6) for four primary reasons:  First, Plaintiff's circular conclusions are insufficient by themselves to support *Monell* liability.  *See Yancy ex rel. Hawk v. California*, 2015 WL 4772807, at *3 (S.D. Cal. Aug. 12, 2015) ("The boilerplate municipal liability allegations are insufficient to state a claim and to provide notice to [the] City of official conduct giving rise to Plaintiffs' claims.  The court notes the circularity of the allegations."); *cf. Benavidez*, 993 F.3d at 1153–54.

Second, Plaintiff's allegations fail to demonstrate that there was a pattern or history of any of the four categories of unconstitutional actions.  *See Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train, though there exists a narrow range of circumstances in which a pattern of similar violations might not be necessary to show deliberate indifference."  (citation, quotation marks, and editorial marks omitted)); *Marsh v. County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) ("Nor is a showing that a single employee was inadequately trained sufficient; there must be a 'widespread practice.'"  (quoting *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir.1989))).

Third, Plaintiff's allegations do not qualify as a "narrow range of circumstances in which a pattern of similar violations might not be necessary,"

*Flores*, 758 F.3d at 1159.  *See Connick v. Thompson*, 563 U.S. 51, 64 (2011) ("[W]ithout proof of a pre-existing pattern of violations," "unconstitutional consequences of failing to train [must] be so patently obvious [for] a city [to] be liable under § 1983.").

And fourth, Plaintiff's allegation that Defendants "knew or should have known" of the wrongful actions is too conclusory to survive Rule 12(b)(6).  *See Tabayoyon v. City of Vacaville*, 2021 WL 107232, at *8 (E.D. Cal. Jan. 12, 2021) ("These allegations are conclusory, with plaintiff pleading only in the most general terms that Chief Carli knew or should have known his subordinate officers engaged in conduct giving rise to the deprivations plaintiff claims here.").

Now, the remaining claims asserted against the County Defendants are the state law claims in Counts III, VI, and VII.  More precisely, those are Plaintiff's claims for negligent training and supervision, false imprisonment, and intentional infliction of emotional distress under Hawaiʻi law.  Because the Court has dismissed all of the claims in the Complaint over which it had original jurisdiction—i.e., the federal law claims—the Court must determine whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).  The Court declines to exercise supplemental jurisdiction over those claims this early in the case, where the Court has yet to issue a scheduling order or select a trial date, and

where Plaintiff is being granted leave to amend some of his federal claims. *See id.* ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)) (alteration in original)); *see also Lacey v. Maricopa County*, 693 F.3d 896, 940 (9th Cir. 2012) ("Where a district court 'dismiss[es] every claim over which it had original jurisdiction,' it retains 'pure[ ] discretion[ ]' in deciding whether to exercise supplemental jurisdiction over the remaining claims." (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)) (alterations in original)). The Court will more thoroughly analyze whether to cross the bridge of supplemental jurisdiction if and when Plaintiff sufficiently alleges federal law claims. *See Humberd v. Wells Fargo Home Mortg.*, 2015 WL 12791514, at *3 (C.D. Cal. May 7, 2015).

To the extent Plaintiff realleges those state law claims in an amended complaint, he should be wary of the potential defects pointed out by the County Defendant in their Motion, ECF No. 13. Particularly relevant is the County Defendants' argument that events occurring before January 5, 2021 likely cannot be predicates for tort claims under Hawaiʻi law considering the State's two-year statute of limitations. *See id.* at 18 (citing Hawaii Revised Statutes § 657-7); *id.* at

24 (making statute of limitations arguments with respect to the false arrest and false imprisonment claims); *id.* at 34 (making statute of limitations arguments with respect to the intentional infliction of emotional distress claim).

Also relevant are the County Defendants' arguments concerning the pleading standard for civil conspiracies under 42 U.S.C. §§ 1983 and 1985. *See* ECF No. 13 at 21–22.  Because the State Defendants have been dismissed, any amended complaint should not assert claims based on the State Defendants' actions (or their employees' actions) unless there are sufficient allegations to support a civil conspiracy between the County Defendants and the State Defendants.  On that issue, the Court notes that many of the pleading decisions cited by Plaintiff in his Opposition, ECF No. 29, are decisions issued before the Supreme Court's shift away from notice pleading, and into plausibility pleading, in the two landmark decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See also Vargas v. Costa*, 829 F. App'x 795, 796 (9th Cir. 2020) ("A claim under [§ 1985] must allege facts to support the allegation that defendants conspired together.  A mere allegation of conspiracy without factual specificity is insufficient."  (quoting *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988))).

Finally, the Court notes that, again, to the extent Plaintiff realleges state law claims in an amended complaint, he should clarify whether he intends to assert

"negligent training and supervision" as a standalone claim under Hawai'i law in addition to a liability theory under *Monell*.  Similarly, Plaintiff should clarify whether he intends to assert a First Amendment free speech claim under § 1983 and, if so, specifically reference the First Amendment in the legal claims section of his amended complaint.

In sum, the Court dismisses all claims against the County Defendants pursuant to Rule 12(b)(6).  The dismissals of the kidnapping claim in Count II and the direct constitutional claims in Counts I, V, and VI are without leave to amend because any amendment of those claims would be futile.  The § 1983 claims in Count IV are dismissed with leave to amend.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims in Counts III, VI, and VII at this point in time, *see Sanford*, 625 F.3d at 561, but Plaintiff is free to reallege those claims in an amended complaint.

## C.  "DOES 1–100"

Before concluding this Order and charging Plaintiff with his duties regarding an amended complaint, the Court touches briefly on Plaintiff's use of "Doe" defendants.  "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Although mere "disfavor" is not an adequate ground to dismiss Doe defendant claims, a failure to state a claim upon which relief can be granted against a Doe defendant is an

25

adequate ground to dismiss.  *Wakefield v. Thompson*, 177 F.3d 1160, 1162–63 (9th Cir. 1999).

Here, because the counts asserted against the State and County Defendants are dismissed due to insufficient factual allegations, and because the Complaint hardly differentiates "DOES 1–100" from the other Defendants using specific factual allegations, the claims asserted against "DOES 1–100" are dismissed sua sponte, to the extent there are any.  *See Clinton v. Pollard*, 2023 WL 3510410, at *4 (S.D. Cal. May 17, 2023) (concluding that the plaintiff failed to sufficiently plead an Eighth Amendment claim against Doe defendants where the plaintiff "fail[ed] to link any specific constitutional violation to any specific, individual state actor, and . . . fail[ed] to even minimally explain how each individual Doe party he seeks to sue personally caused a violation of his constitutional rights"); *Char v. Simeona*, 2018 WL 5815519, at *7 (D. Haw. Nov. 6, 2018) (dismissing claims against Doe defendants where "[i]t is impossible to discern between any Doe Defendant to determine who, individually, did exactly what to [plaintiff], and when the alleged action occurred").

Leave to amend is granted in the same manner as with the claims against the County Defendants:  Plaintiff may amend his § 1983 claims against the Doe defendants and, if he wishes, reallege the violations of state law against the Doe defendants.

## IV.   CONCLUSION

Based on the foregoing, the Court GRANTS the State Defendants' Motion to Dismiss, ECF No. 12, and DISMISSES all claims against them without leave to amend.  The State Defendants are therefore terminated as parties to this case.

The Court GRANTS the County Defendants' Joinder to the State Defendants' Motion, ECF No. 21.  And the Court GRANTS the County Defendants' Motion to Dismiss, ECF No. 13, and DISMISSES all claims against them, permitting leave to amend only the § 1983 claims in Count IV and the state law claims in Counts III, VI, and VII.  The Court does so without prejudice to the County Defendants reasserting in a subsequent motion to dismiss any arguments not addressed by this Order.

Any claims against Defendants "DOES 1–100" are DISMISSED sua sponte and with the same amendment permissions given with respect to the claims against the County Defendants.

If Plaintiff elects to file an amended complaint, he must comply with the following requirements:

(1)    Plaintiff's deadline to file an amended complaint is **August 25, 2023**;

(2)    Plaintiff's amended complaint should be titled "First Amended Complaint" and should not depend on the original Complaint; and

(3)    Plaintiff must cure the pleading deficiencies identified above.

Plaintiff is cautioned that failure to timely file an amended pleading that conforms with this Order will result in the automatic dismissal of this action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, July 7, 2023.



Jill A. Otake
United States District Judge

CIV. NO. 23-00005 JAO-RT, *Powell et al. v. State of Hawaii et al.*; Order Granting Defendants' Motions to Dismiss, ECF Nos. 12 and 13, with Leave to Amend

28